**JACKSONIA IRIS WATSON v. AUGUST MARCELLUS WATSON**

15 So. (2nd) 446   June Term, 1943
November 9, 1943   Division A

*Boone & Boone* and *Robert J. Boone,* for appellant.
*Eugene M. Baynes,* for appellee.

TERRELL, J.:

This case is typical of many that have from time to time changed the current of some phase of the law. A final decree of divorce was granted the appellee father but he and the appellant mother were both found to be equally competent to have the custody of the two girl children five and three years old. The chancellor awarded them to the father for six months and to the mother for six months of each year. The mother seeks a reversal of the decree on this point, contending that she should have been given their full custody with the right of visitation by the father.

The decided weight of authority in this country supports the mother's contention but it is predicated on the theory that she staked her life to bring them into being, that she assumes first responsibility for their nurture, training, and companionship, that they are the objects of her devotion and that she spends all she has to formulate their character and direct their impulses through childhood and adolescence.

The record not only discloses that the father and mother were of highly respectable character but it also shows that both live in communities where social, educational, and other environmental advantages are equal. It also shows, and this is the decisive point in the case, that the father and mother both work, that the mother lives in the home of a sister where there are a number of other children, and that the father maintains his own home presided over by his mother, who assumed this responsibility after the divorce and so far as the record shows, would be a safe guardian for the children.

Such was the background on which the chancellor divided the custody equally between the father and mother and we find no showing that the welfare of the children was not best served in so doing. We are conscious of a doctrine approved in some countries which permits the parents to park the children in creches and nurseries and thereby enable the mother to become a worker and bring home a pay check. Circumstances may be such that make it possible for her to do this and still spend herself in behalf of the children in a way to give her a preferential right of custody but in this case the chancellor was not so convinced and we are not shown

that his judgment was not just. One with even a slight knowledge of the kinks in human nature does not have to sleep with a philosopher's stone under his pillow to divine that the best interest of two little girls will be equally as well served in a comfortable home with their father and grandmother as in another modest home where two families are scrambled and where responsibility for nurture and training is divided or suspended.

This statement of the law is of course based on the premise that training a child for citizenship in a democracy like ours contemplates more than giving it something to eat and wear. The responsibility for that "more" while actually a dual one, in reality falls primarily on the mother. If she goes and returns as a wage earner like the father, she has no more part in this responsibility than he and it necessarily follows that all things else being equal, she has no better claim when the matter of custody is at issue. Creches and nurseries may be depended on to give a child its bottle or bag of candy or to see that it plays in the sand box instead of eating the sand or blowing it in the eyes of a playmate, but we have yet to hear of one that made any claim to developing moral background, spiritual culture, a sense of social response or reverence for God. The mother's preferential right of custody hangs on the teaching of these elements and when they are left off, juvenile delinquency and the policeman's task begins.

Bread and a pay check cannot be discounted as a factor in well balanced domestic relations but if the emphasis on the welfare of the children in the family is to stop there, the job of the policeman is merely rendered more grievous. If experience has taught us anything, it has taught us that moral fiber is not inherited like bonds and land but if acquired must be imparted the hard way by precept and example. Experience also teaches that in nine cases out of ten juvenile delinquency is a product of parental delinquency and that is the place to apply the remedy. A pay check as big as that of a top flight movie artist will not help it; neither will it afford the mother any preference in the right of custody.

Affirmed.

BUFORD, C. J., CHAPMAN and ADAMS, JJ., concur.